UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HECNY SHIPPING LTD.,

   5/F., Hecny Centre
   111 Wai Yip Street
   Kwun Tong, Kowloon, Hong Kong

       Plaintiff,

  - against -

HYC LOGISTICS, INC.,

   Serve: Louis Samberg, Registered Agent
          5480 Crescent Lane
          Memphis, TN 38120

   AND

   Serve: 2600 Thousand Oaks Blvd.
          Suite 1350
          Memphis, TN 38118-2476

       Defendant.

Civil Action No.: 1:24-cv-02651

**COMPLAINT**

Hecny Shipping Limited, by and through its attorneys, Hancock, Daniel & Johnson P.C. and Lennon, Murphy & Phillips LLC, as and for its Complaint herein, alleges upon information and belief as follows:

**The Parties**

1. Plaintiff, Hecny Shipping Limited ("Plaintiff" or "HSL") is a corporation organized and existing under and by virtue of the laws of a foreign country with an office and principal place of business located at 5/F, Hecny Centre, 111 Wai Yip Street, Kwun Tong, Kowloon, Hong Kong,

1

with an agent c/o Hecny Transportation Inc., 141-07 20th Avenue, Suite 302, Whitestone, Queens, New York 11357. HSL is engaged in business as a non-vessel operating common carrier ("NVOCC") of goods by water for hire registered with the United States Federal Maritime Commission.

2. Defendant, HYC Logistics, Inc. ("Defendant" or "HYC") is a corporation organized and existing under and by virtue of the laws of State of Tennessee with an office and principal place of business located at 2600 Thousand Oaks Boulevard, Suite 1350, Memphis, TN 38118. Upon information and belief, HYC is engaged in business as a delivery agent for cargo shipments inbound into the United States from foreign locations, and as a freight forwarder and customs broker.

**Jurisdiction and Venue**

3. This Honorable Court has subject matter jurisdiction over this action under 28 U.S.C. § 1333 and Fed. R. Civ. P. 9(h) because the claims arise out of the breach of an admiralty and maritime contract.

4. In addition to admiralty jurisdiction, subject matter exists on the alternative basis of diversity of citizenship under 28 U.S.C. § 1332 because HSL is a foreign entity and HYC is a Tennessee citizen and the matter in controversy is in excess of $75,000, exclusive of interests and costs.

5. This Court has personal jurisdiction over the Defendant on the basis that the Defendant has consented to personal jurisdiction within the District of Columbia.

6. Venue in this District is proper pursuant to a valid forum selection clause that states in relevant part, as follows:

> If [HYC] is the defendant in any action or request for arbitration brought by HSL, venue shall be in the country where Agent is based

under rules then effective in the capital city of the appropriate court of law or in a recognized arbitration institute.

A copy of the Agency Agreement, signed for and on behalf of both parties, is attached as Exhibit 1 to this Complaint.

**The Contract Between the Parties**

7. In the Spring of 2013, HSL and HYC entered into a Non-exclusive Agency Agreement (the "Agreement") whereby HYC was to act as an agent for HSL in connection with the latter's work as an NVOCC. In Clause 1.1 of the Agreement, HYC agreed to "promote HSL's NVOCC/freight forwarding services, arrange customs clearance, trucking and distribution and other related services in all of Agent's locations." As part of this work, HYC was to sign and issue bills of lading on behalf of HSL "in accordance with applicable law, and only upon written instructions from HSL" and to arrange for documentation and clearance of cargo "in accordance with procedures issued by HSL and with government regulations."

8. In addition, and of particular relevance to the claims underlying this action, HYC was to deliver cargoes transported for HSL at destination and, before doing so, was to obtain surrender of the bills of lading HSL had issued for the shipments. Clause 1.1 of the Agency Agreement provided in part as follows:

> Neither Agent or any person/company whose services Agent may use shall release the cargo unless and until HSL's original bills of lading are surrendered. If release is made without the surrender of the HSL original bills of lading, unless release is authorized in writing by HSL, Agent shall be held fully liable for reimbursing HSL for any fees, claims, damages, or losses that HSL may incur, including court costs and attorneys fees, arising from the release of the cargo.

**The Shipments at Issue**

    **The Detail Fashion Shipments**

9.      One of the cargo shippers in China that used HSL's transportation services is Detail Fashion Limited ("DFL") of Tianjin, China.

10.      During the time from April 6, 2023 to July 24, 2023, DFL shipped with HSL ten containers holding cartons said to contain women's apparel with HSL, for which HSL issued to DFL nine "house" bills of lading for the shipments. In each case, the consignee and notify party was Louise Paris Ltd. ("Louise Paris"), 1407 Broadway, Suite 1405, New York, NY 10018 and the delivery agent was HYC. The containers in seven of the nine shipments were to be discharged (i.e., unloaded) from the carrying vessels in the Port of New York while the containers in the remaining two shipments were to be discharged in Long Beach, CA.

11.      In accordance with standard shipping industry practice and its obligations pursuant to the Agency Agreement, HYC was to withhold delivery of the shipments to Louise Paris until Louise Paris surrendered the HSL bills of lading to HYC. Upon information and belief, to obtain the bills of lading from DFL, Louise Paris was required to make payment to DFL for the apparel that had been shipped thereunder.

12.      In the Fall of 2023, HSL learned that Louise Paris had not paid DFL for the merchandise and had obtained possession of it without surrendering the HSL bills of lading to HYC, as required. Alleging breach of the bills of lading contracts, DFL filed a lawsuit against HSL in Shanghai, China, alleging damages in the amount of RMB 5,677,710.86 yuan (approximately USD $798,000) and obtaining an attachment of funds in HSL's bank account in that jurisdiction in the amount of USD $791,090.09.

13. HSL notified HYC of the DFL lawsuit and demanded that HYC assume the defense of DFL's claims against HSL and indemnify HSL against any losses.

14. HYC responded by arranging payment in the amount of $791,090.09 directly to DFL. In return, DFL released the attachment of HSL's funds in its bank account in Shanghai and, after the fact, authorized the release of the shipments to Louise Paris.

15. As a result of the lawsuit DFL filed against HSL in Shanghai and the attachment of HSL's funds, HSL sustained damages in the amount of $19,572,72 consisting of legal fees and trucking charges.

16. On January 25, 2024, HSL invoiced HYC for most of these charges, but HYC has refused to pay the invoice.

17. HYC has acknowledged that it is obligated to pay HSL for this amount. *See HYC Logistics v. Louise Paris Ltd., et al.*, Case No. 2:24-cv-02191(TLP)(ATC), (W.D. Tn. Mar. 26, 2024), (ECF No. 1, Complaint) at ¶ 72.

**The Second Set of Shipments**

18. In addition to the DFL shipments, a second set of shipments took place between March 27, 2023 and July 30, 2023. This second set of shipments were made by the following shippers: Dongyang Pate New Material Corporation; Ningbo Yuanlin Textile Co., Ltd.; Shanghai Suxiao Clothing Corp., Ltd. and Nantong Chengjia Co., Ltd. In each case, the shipper shipped with HSL one or more containers holding cartons said to contain girls' or women's apparel, for which HSL issued thirteen "house" bills of lading for the shipments. In each case, the consignee and notify party was Louise Paris Ltd., 1407 Broadway, Suite 1405, New York, NY 10018 and the delivery agent was HYC. The containers in five of the thirteen shipments were to be discharged from the carrying vessels in the Port of New York while the containers in the remaining shipments were to

be discharged in Los Angeles and Long Beach, CA.

19. On information and belief, HYC released the shipments for delivery to Louise Paris listed without obtaining the original HSL bills of lading and Louise Paris did not pay the shippers for the goods covered by the bills of lading, which in turn, has exposed HSL to claims by the shippers for the value of the material, similar to the claims DFL asserted in its Shanghai lawsuit.

20. By letter dated May 3, 2024, HSL, through its attorneys, Lennon, Murphy & Phillips, LLC demanded that HYC provide HSL with acceptable security in the amount of no less than $1,425,000 for HSL's benefit in the event one or more of the above-named shippers, file suit or otherwise claim against HSL for Louise Paris' nonpayment for the goods covered by the subject bills of lading and related damages.

21. HYC has refused to provide HSL with acceptable security for claims that might be asserted against it.

**The Ningbo Yuanlin Textile Co., Ltd. Lawsuits**

22. As noted above, one of the cargo shippers in China that has used HSL's transportations services is Ningbo Yuanlin Textile Co., Ltd. ("NYT") of Ningbo, China.

23. From May 6, 2023 through July 24, 2023, NYT shipped 13 containers said to contain women's apparel with HSL, who issued nine "house" bills of lading for the shipments. In each case, the consignee and notify party was Louise Paris and the delivery agent was HYC. Three of the containers were to be discharged in the Port of New York with the remaining containers discharged in Long Beach, CA.

24. In accordance with the standard shipping industry practice and its obligations under the Agency Agreement, HYC was to withhold delivery of the shipments to Louise Paris until Louise Paris surrendered the HSL bills of lading to HYC. To obtain the bills of lading, Louise

Paris was required to make payment to NYT for the apparel that had been shipped thereunder.

25. In August of 2024, NYT filed three lawsuits against HSL in Shanghai, China, alleging that it was not paid for goods or materials shipped to Louis Paris, HSL under bills of lading where HYC was the delivery agent and alleging to have sustained damages in the aggregate amount of RMB 2,668,043.30 yuan (approximately USD $373,801).

26. NYT's claims against HSL are the direct result of HYC's decision to release the shipments to Louise Paris without first obtaining surrender of the original HSL bills of lading.

27. As a result of the lawsuit NYT filed against HSL in Shanghai, HSL continues to suffer damages consisting of ongoing legal fees.

28. Pursuant to the Agreement, HYC is obligated to defend, indemnify and hold HSL harmless for any expenses HSL incurs defending itself against NYT's claims.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

29. HSL repeats and realleges each and every statement and allegation made in paragraphs 1 through 28 of this Complaint with the same force and effect as if herein repeated and set forth at length in this First Cause of Action.

30. HSL and HYC entered into a Non-exclusive Agency Agreement and are bound by its terms.

31. Pursuant to the Agreement, HYC was to deliver cargoes transported for HSL at destination, but before doing so, HYC was obligated to obtain surrender of HSL's original bills of lading.

32. HYC, without obtaining surrender of the original HSL bills of lading, released the shipments for delivery to Louise Paris.

33. Upon information and belief, Louise Paris did not pay the shipper for the cargo.

34. As the legal and proximate result of HYC's breaches of the Agreement, HSL has been damaged.

35. HSL's damages continue to accrue due to, *inter alia*, shippers making claims or filing lawsuits against HSL as a result of HYC's failure to obtain surrender of the original HSL bills of lading.

36. HSL's damages include, but are not limited to, damages it may become liable to pay the shippers, substantial legal fees in defending claims made against it by the shippers, as well as, in seeking to enforce HYC's contractual promise to indemnify and hold HSL harmless for any claims against it.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

37. HSL repeats and realleges each and every statement and allegation made in paragraphs 1 through 28 of this Complaint with the same force and effect as if herein repeated and set forth at length in this Second Cause of Action.

38. HSL and HYC entered into a Non-exclusive Agency Agreement.

39. The Agreement imposed upon HYC a duty to act in good faith and conduct fair dealing; this included the obligation not to enter into agreements with third-parties, such as Louise Paris, that are contrary to the express terms of the Agreement.

40. Specifically, HYC entered into an Indemnity Agreement with Louise Paris, wherein HYC promised to release cargo without surrender of the original HSL bills of lading.

41. HYC knowingly acted in a manner to deprive HSL of the right to receive the benefits under the contract between them, and in doing so breached said contract and its implied duty to act in good faith and conduct fair dealing, which breaches proximately caused HSL to suffer injury and damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment)

42. HSL repeats and realleges each and every statement and allegation made in paragraphs 1 through 28 of this Complaint with the same force and effect as if herein repeated and set forth at length in this Third Cause of Action.

43. There is a real, concrete dispute between the parties – there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment pursuant to 28 U.S.C. § 2201.

44. NYT has commenced a lawsuit against HSL in the China Maritime Court seeking to recover monetary damages because it was not paid by Louise Paris for cargoes shipped under HSL bills of lading.

45. Upon information and belief, NYT would not deliver to Louise Paris the original HSL bill of lading, unless and until, it was paid in full by the consignee, Louise Paris.

46. Upon information and belief, Louise Paris has not paid NYT for cargoes shipped and received.

47. Upon information and belief, HYC released the cargoes without requiring Louise Paris to surrender of the original bill of lading.

48. HSL did not authorize HYC in any manner to release the cargoes without surrender of the original HSL bill of lading.

49. Pursuant to its obligation under the Agreement to indemnify and hold HSL harmless, HYC is liable to reimburse HSL for any fees, claims, damages, or losses that HSL may incur because of HYC's failure to obtain surrender of the original HSL bills of lading before releasing the cargoes for delivery to Louise Paris.

50. The claims NYT has asserted fall within the scope of Clause 1.1 of the Agreement, and as such, HYC is liable to indemnify and hold HSL harmless for any and all expenses incurred in connection with NYT's claims, including but not limited to, any legal fees that HSL incurs in defending against NYT's claims in China, any legal fees that HSL incurs in seeking to enforce HYC's obligations pursuant to the Agency Agreement, and any other expenses that may arise.

51. HSL is entitled to a declaration that, *inter alia*, HYC has breached the Agreement, and that HSL is entitled to recover all of its costs incurred both in the enforcement of its contractual rights, but also, in defense of claims or lawsuits asserted against it arising from HYC's failure to obtain surrender of the original HSL bills of lading prior to releasing the cargoes for delivery to Louise Paris.

52. HSL is entitled to a declaration that, *inter alia*, HYC is obligated to indemnify and hold HSL harmless against any and all claims made by any of the aforementioned shippers in respect of cargoes HYC released for delivery to Louise Paris without first obtaining surrender of the original HSL bills of lading.

**WHEREFORE**, HSL prays for the following relief:

A. On Plaintiff's First Cause of Action, a judgment in Plaintiff's favor against the Defendant in an amount to be determined at trial;

B. On Plaintiff's Second Cause of Action, a judgment in Plaintiff's favor against the Defendant in an amount to be determined at trial;

C. On Plaintiff's Third Cause of Action, declaring that, *inter alia*, Defendant is obligated to defend and indemnify and hold the Plaintiff harmless for any and all claims asserted by any of the aforementioned shippers because Defendant, in violation of the Agreement, released

cargoes for delivery to Louise Paris without first obtaining surrender of the original HSL bills of lading;

D.     Awarding Plaintiff its costs and expenses, including its actual attorneys' fees to the extent permitted by law and authorized by the Agreement; and

E.     Awarding Plaintiff such other, further or different relief as the Court may deem just and proper.

Dated: Glen Allen, Virginia
       September 16, 2024

*/s/* John B. Mumford, Jr.
John B. Mumford, Jr. (DC Bar No. 1027364)
HANCOCK, DANIEL AND JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
jmumford@hancockdaniel.com

LENNON MURPHY & PHILLIPS, LLC
Attorneys for Petitioner Hecny Shipping Line

/s/ Patrick F. Lennon
Patrick F. Lennon (*pro hac vice forthcoming*)
Elliott T. Williams (*pro hac vice forthcoming*)
Lennon, Murphy & Phillips, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
Telephone: (212) 490-6050
plennon@lmplaw.net
elliott.williams@lmplaw.net